■ RICHARD STONE, Appellant, v ARONWALD & PYKETT, Respondent. [713 NYS2d 198] —In an action, *inter alia,* to recover damages for legal malpractice, the plaintiff appeals from an order of the Supreme Court, Westchester County (Coppola, J.), entered July 9, 1998, which granted the defendant's motion for summary judgment dismissing the complaint and denied his cross motion for summary judgment on the issue of liability.

Ordered that the order is modified, on the law, by deleting the provision thereof granting those branches of the defendant's motion which were for summary judgment dismissing the first and second causes of action and substituting therefor a provision denying those branches of the motion; and as so modified, the order is affirmed, without costs or disbursements.

Underlying this legal malpractice action is the defendant law firm's representation of the plaintiff Richard Stone in an action for an accounting which he brought against his brother Norman Stone with respect to certain family-owned businesses (*see, Stone v Stone,* 229 AD2d 388; *Stone v Stone,* 109 AD2d 834). In *Stone v Stone* (229 AD2d 388, *supra*), we affirmed a judgment of the Supreme Court, Westchester County, which,

upon an order, *inter alia*, confirming a Referee's report and denying the plaintiff's cross motion to reject the report, was in favor of Norman Stone and against the plaintiff in the principal sum of $28,788.63.

The plaintiff then brought the instant action, alleging, *inter alia*, that but for the negligence of the defendant law firm in its representation of him in the accounting action, he would have obtained a money judgment against his brother Norman. The Supreme Court granted the defendant law firm's motion for summary judgment dismissing the complaint. The court reasoned that any recovery by the plaintiff in the accounting action would have been barred by a "so ordered" stipulation, dated December 8, 1989, and executed by the plaintiff *pro se*, which discontinued an action commenced in Federal court by the plaintiff against Norman and released Norman "from all claims, past and present". Accordingly, "it could not be said that 'but for' the negligence of the defendant [law firm], the plaintiff would have recovered". The court also rejected the plaintiff's claim that the defendant was negligent in permitting him to proceed *pro se* on certain occasions, concluding that any advice the defendant offered the plaintiff would fall within the professional judgment rule and thus could not form the basis for a finding of malpractice.

Contrary to the Supreme Court's determination, under the circumstances of this case, it cannot be said that the release executed by the plaintiff discontinuing the Federal action was intended to preclude him from recovering against Norman in the then-pending State court action for an accounting (*see, Best v Yutaka,* 90 NY2d 833). The meaning and coverage of a general release necessarily depends upon the controversy being settled and upon the purpose for which the release was given, and the release may not be read to cover matters which the parties did not intend to cover (*see, Cahill v Regan,* 5 NY2d 292, 299; *Lefrak SBN Assocs. v Kennedy Galleries,* 203 AD2d 256, 257). Here, the parties continued to litigate the accounting action after the release had been executed. Although Norman, in support of his motion to confirm the Referee's report, did argue before the Supreme Court that the accounting was barred by the general release signed by the plaintiff in the discontinued Federal action, the Supreme Court did not address the issue, and, on appeal from the order confirming the Referee's report, we declined to reach the issue because Norman had failed to amend his answer to plead the execution of the release as an affirmative defense (*see, Stone v Stone,* 229 AD2d 388, *supra*).

Further, there exist triable issues of fact as to whether the defendant law firm's conduct constituted legal malpractice. To recover damages for legal malpractice, a plaintiff must prove that the defendant attorney failed to exercise the degree of care, skill, and diligence commonly possessed by a member of legal community, that the attorney's negligence was a proximate cause of the loss sustained, that the plaintiff incurred damages as a direct result of the attorney's actions, and that the plaintiff would have been successful in the underlying action had the attorney exercised due care (*see, Iannarone v Gramer*, 256 AD2d 443; *Volpe v Canfield*, 237 AD2d 282). Contrary to the defendant's contention that its participation in the accounting action was limited to advising the *pro se* plaintiff, there was never a formal withdrawal from representation, and the record before this Court, including invoices from the defendant law firm to the plaintiff and the hearing minutes, reveals that the defendant's involvement went far beyond offering advice to a *pro se* plaintiff.

However, the plaintiff's third cause of action, sounding in infliction of emotional distress, must be dismissed as the allegations set forth in the complaint are insufficient to support a claim for either intentional or negligent infliction of emotional distress (*see, Perry v Valley Cottage Animal Hosp.*, 261 AD2d 522). Ritter, J. P., Thompson, Krausman and Goldstein, JJ., concur.